A98A0520. HOLT v. LEITER.
(501 SE2d 879)

BEASLEY, Judge.

Jerry Holt, father of a boy born February 2, 1991, appeals an order modifying a previous custody order and granting primary physical custody to the son's mother Constance Diane Leiter. Her petition was prompted by Holt and the child's move from Augusta to Alabama

---

without notice to Leiter. Holt raises several procedural issues and contends there is no evidence of a change in the child's condition sufficient to order a change in custody.

The parties were divorced in late 1994, and the separation agreement provided Holt would have custody of the three-year-old boy subject to certain visitation rights. The next year near Christmas, when Leiter attempted to get him from Holt's residence for her court-ordered visit, she was told by Holt's family that he moved with the child to an unknown location. The family warned her not to return to the house or call anymore. Holt had moved the day before. He contended in the trial court that he left Leiter an answering machine message about his plans, but Leiter denied receiving it, and Holt apparently has abandoned this assertion on appeal. According to him, the message contained no address or phone number where he could be reached anyway.

Three months after the aborted visit, on March 11, 1996, Leiter filed a verified petition to modify the McDuffie County custody order. She alleged she was unable to locate the child and sought custody and control. She filed the petition in Richmond County, where Holt and the child had resided before the sudden move to Alabama, and she told the court that service on Holt was unnecessary because Holt's whereabouts were unknown. The court entered an ex parte order awarding custody and control to Leiter and directing all law enforcement officers and officials of the State of Georgia, in the event they could locate the child, immediately to take custody and deliver him to Leiter.

About June 11, Leiter filed an action in Alabama to obtain a writ of assistance to regain physical custody, attaching a copy of the Georgia petition and affidavit. This was apparently Holt's first knowledge of the Georgia action. A hearing was held, and the Alabama court ordered that Holt have an opportunity to challenge the Georgia March order. The order explained that if he did not do so, the child would be turned over to Leiter pursuant to the Georgia order. In the meantime, the child was placed with the Department of Family & Children Services in Alabama.

On June 24, Holt moved to set aside the March order on the grounds that he did not receive notice of the action nor of any hearing. Holt's motion requested that the court set a hearing "concerning the best interests of the child." One week later he moved to dismiss the petition to change custody altogether, contending he was never served with it and no attempt at service had ever been made.

A hearing was held in Richmond County on July 1 to address the two motions. Both parties were present and represented by counsel. The child was still in DFACS custody in Alabama. At the hearing, Leiter attempted to serve Holt by giving a copy of the petition to his

attorney. The parties agreed at this hearing that the Uniform Child Custody Jurisdiction Act (UCCJA) applied to the proceedings.

The court first addressed the question of subject matter jurisdiction, then venue in Richmond County, then service of process, then whether filing a motion to set aside waives service, and finally, whether the temporary order should remain in effect pending final resolution of the case. Holt and Leiter testified on the merits of the custody issue.

Leiter testified that up until a week or so before the hearing, she had not seen her son since December 11, 1995, a period of over six months. Holt had refused to allow court-ordered visitation on at least five previous occasions. The court received evidence that Leiter obtained contempt citations against Holt for some of these refusals. She described the steps she took to try to locate Holt and their son after Holt left without word. On cross-examination Holt admitted he was not listed in any Alabama phone book, that he had never notified the McDuffie court of his new address, and that he gave no notice of his move or new address to his former employer.

In its order following the hearing the court specifically held it had subject matter jurisdiction of the case pursuant to the UCCJA. The court amended its March order and granted Leiter immediate and extended visitation rights to the child at her home in McDuffie County, in conformity with the Alabama court order. Holt was given limited visitation rights and ordered not to take the child out of Georgia. The court reserved its ruling as to permanent custody until a final hearing could be held. The court apparently also ordered the appointment of a guardian ad litem.

On October 25, Holt's new attorney filed an answer and counterclaim to the petition denying the court had subject matter jurisdiction and raising only one affirmative defense, failure to state a claim.

A hearing was held on October 29 at which both parties, their counsel, and the guardian ad litem were present. The court stated that Holt's procedural motions had been addressed and denied, but Holt pressed the issue of personal jurisdiction, urging there had been no service. The court took the question under advisement, allowed further briefing on it, and decided only the issue of visitation.

On November 1, Holt was formally served with the Georgia petition by personal service and certified mail.

The court entered an order on November 26 stating that in July it had reserved a ruling on personal jurisdiction. It ruled that the action did not commence until proper service on November 1 and that it had personal and subject matter jurisdiction. The court ordered the parties to schedule the matter for final hearing.

On December 20, Holt moved to set aside the November 26 order on the ground that subject matter jurisdiction could not be based on

events occurring after Leiter's petition was filed on March 11, 1996.

The final hearing was held on April 4, 1997, before a different judge. The court confirmed the earlier denial of Holt's procedural motions. It gave each party opportunity to review the report of the guardian ad litem. The parties presented evidence on the merits. Leiter reiterated Holt's obstinate prevention of the fulfillment of her visitation rights, the contempt orders against him, and how Holt and the child were gone when she went for the child at Christmas time.

During her testimony she explained that she had begun to deny Holt visitation rights in January 1997 on her attorney's instruction, in response to learning things from the child that led her to believe Holt was about to take the child again and not bring him back. The child had told her Holt was taking him to Alabama during his visitation, which Holt was not allowed to do.

The court in its final order stated that it had previously overruled and denied the motions to set aside and dismiss, and it affirmed those rulings. It found there had been a change in the circumstances affecting the child's welfare and that a change to joint custody would be in the child's best interest. Leiter was designated as the primary physical custodian with visitation rights for Holt.

1. In one enumeration, Holt contends the court did not have subject matter jurisdiction because he was not a resident of Georgia and that venue was not proper in Richmond County.

The parties agree the UCCJA applies to the case. The court determined that a Georgia court had jurisdiction under the UCCJA because it was in the best interest of the child, at least one parent had a significant connection with the state, and there was available in Georgia substantial evidence concerning the child's present or future needs and concerns. Jurisdiction is properly grounded on this finding.[1] Holt does not present any argument or citation of authority to rebut this decision. The only reason the child had a growing connection with Alabama was that Holt improperly moved him there from Georgia without notice.

This action was filed at a time when the child's home state under the UCCJA was Georgia, but Holt was not formally served until almost eight months later. Because the court had jurisdiction under the best interest test, moot are the questions of whether the court had subject matter jurisdiction based on the child's "home state" under OCGA § 19-9-43 (a) (1) and whether a delay in service of process affects when a proceeding under the UCCJA has commenced for the purposes of determining the home state.

---

[1] OCGA § 19-9-43 (a) (2) (A) and (B); *Garrett v. Garrett*, 267 Ga. 356, 358 (2) (477 SE2d 804) (1996) ("Alabama is among those states which have enacted the Uniform Child Custody Jurisdiction Act (UCCJA). Section 30-3-20 et seq. of Ala. Code of 1975.").

The general purposes of the UCCJA are to: "(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody, which competition and conflict have in the past resulted in the shifting of children from state to state with harmful effects on the children's well-being; . . . [and] (5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards."[2]

Holt waived any question of improper venue by not objecting in writing to the case being brought in Richmond County either in his motion to dismiss, his motion to set aside, or his answer and counterclaim.[3] The affirmative defense of improper venue in a child custody case may be waived.[4]

Also, "[t]his court has long recognized that OCGA § 5-6-40 requires that an enumeration of errors 'shall set out separately each error relied upon.' . . . [I]n the exercise of our sound discretion, [we] may elect to review any one or more of the several assertions of error contained within a single enumeration and to treat the remaining assertions of error therein as abandoned."[5] Holt's procedural error eliminates any cause to complain of our ruling on the venue issue.

2. The next enumeration is that the March ex parte order was not authorized because Holt had no notice of the hearing and thus it contravened the UCCJA. Although it is true that Holt was unaware of the petition and the March hearing, the validity of the March order is a moot question. It was superseded by the July order which was entered after a hearing attended by Holt and his attorney. Holt had actual and reasonable notice of the July hearing and does not contend otherwise. The UCCJA does not require more.[6] The lack of at least 30 days notice[7] was not raised in either of his motions, at the July hearing, or in his answer. It is deemed waived.

3. Holt contends he was not properly served until November 1, 1996, that Leiter was not diligent in attempting to serve him between March and November, that Leiter's petition should have been dismissed, and that the orders issued before November 1 are null and void.

Holt was properly served on November 1 and has not objected to this service. The order appealed from was entered June 16, 1997, nunc pro tunc April 4, 1997, based on a hearing held that date. There is no limitation period on filing a petition under the UCCJA. The

---

[2] OCGA § 19-9-41 (a).

[3] OCGA § 9-11-12 (g) and (h).

[4] *Houston v. Brown*, 212 Ga. App. 834 (443 SE2d 3) (1994); *Daust v. Daust*, 204 Ga. App. 29, 31 (418 SE2d 409) (1992).

[5] *West v. Nodvin*, 196 Ga. App. 825, 830 (4) (c) (397 SE2d 567) (1990).

[6] See OCGA § 19-9-44.

[7] OCGA § 19-9-45 (b).

issues of lack of service and diligence before November 1 are moot. The earlier orders are no longer in effect and had no permanent provisions. The June 1997 order is fully supported by proper service.

*Robinson v. Robinson*[8] is not on point. That case addressed the requirement of showing plaintiff's diligence in ascertaining the defendant's whereabouts necessary to justify service by publication.

4. Holt contends "the mere fact that he had chosen to move to another state was an insufficient basis for a change in custody."

Before child custody can be changed, the trial court must find that, since the last award, there has been a change in any material conditions or circumstances affecting the well-being of the child.[9] "Though the trial judge is given a discretion, he is restricted to the evidence and is unauthorized to change the custody where there is no evidence to show new and material conditions that affect the welfare of the child."[10] The court is authorized to "look into all the circumstances of the parties" when ruling on a custody modification.[11]

To support a custody change, the court must affirmatively find "that the original custodian is no longer able or suited to retain custody or that conditions surrounding the child have so changed that modification of the original judgment would have the effect of promoting his welfare."[12] Such a change will be affirmed "if there is reasonable evidence to support the decision."[13]

Despite Holt's attempts to downplay the significance of his actions, it is inescapable that he improperly absconded with the child without proper notice to Leiter.[14] One of the purposes of the UCCJA, quoted above, is to deter just such behavior.[15] Second, Holt had denied the mother visitation rights on at least five or six prior occasions, with contempt orders resulting in some of them. The child was deprived of his mother in all these instances.

Third, Leiter testified the child was doing well in school since he had been back in Augusta; Holt had not communicated with their son for more than a month before the hearing; Holt and his father were very possessive and did not want Leiter to have any relationship with

---

[8] 260 Ga. 731 (399 SE2d 64) (1991).

[9] OCGA § 19-9-1 (b) (Supp. 1997); *Gazaway v. Brackett*, 241 Ga. 127, 128 (244 SE2d 238) (1978); *Haralson v. Moore*, 237 Ga. 257 (227 SE2d 247) (1976); *Robinson v. Ashmore*, 232 Ga. 498, 500 (207 SE2d 484) (1974).

[10] *Young v. Young*, 216 Ga. 521, 522 (118 SE2d 82) (1961).

[11] OCGA § 19-9-1 (a) (1) (Supp. 1997).

[12] *Ormandy v. Odom*, 217 Ga. App. 780, 781 (1) (459 SE2d 439) (1995).

[13] *Blackburn v. Blackburn*, 168 Ga. App. 66, 71 (1) (308 SE2d 193) (1983); *Haralson*, supra, 237 Ga. at 258; *Robinson*, supra, 232 Ga. at 500-501.

[14] See OCGA § 19-9-1 (c) (2) and (3) (Supp. 1997) (parent must give notice of change of address, including full address of the new residence, at least 30 days prior to the anticipated change).

[15] OCGA § 19-9-41 (a) (5).

the boy; he became more social since returning to Georgia and wanted to watch television less; and he exhibited a demeanor of greater satisfaction and less apprehension than when he just came for visitations. Leiter testified she overheard Holt tell the child "that he could not like his mommy . . . [or] his mommy's husband, his stepfather [or] . . . his cousins."

Holt testified he moved to get more "space" between him and his ex-wife and because he did not like getting served with contempt citations "every time I turned around." He testified he was not worried about his son's contact with his mother after he moved to Alabama. He did admit he violated the Georgia court's temporary order by taking the child to Alabama on one occasion.

The guardian ad litem interviewed the child, Leiter and her husband, Holt and his father, and DFACS personnel from Alabama and Georgia. Her involvement spanned August 15, 1996 through January 2, 1997. Her reports indicate growing concern about the child spending time in Alabama with Holt and his parents. She also reported her concerns that Holt and his family were attempting to brainwash the child against his mother and that Holt regularly takes pictures and videotape of the boy looking for marks of abuse, but he never responded to requests that Leiter be allowed to see them.

" '(T)he repeated denial of the non-custodial parent's visitation rights' authorizes a change [in custody]."[16] In *Arp*, the mother sought to modify a prior custody order in the father's favor in part because he had repeatedly refused visitation to the mother and refused visitation over the phone, and this and other things amounted to a pattern of violations of the divorce decree.[17] As in *Arp*, based on the evidence in this case, "the trial judge could draw the reasonable inference that the types of behavior exhibited by the father towards the mother, which in large measure were contemptuous of court authority, and his negative attitude and overt antipathy towards the [boy's] relationship with her, demonstrated by his repeated insulation of [the boy] from contact with her, adversely affected [the boy's] natural relationship with [his] mother because of [the father's] influence on [the boy]. This could be deemed harmful to the [boy]. . . . [The court] could also draw the reasonable inference that the father's repeated interference with the mother's participation in child-rearing disserved [the boy's] welfare. These support the conclusion that it was

---

[16] *Arp v. Hammonds*, 200 Ga. App. 715, 718 (409 SE2d 275) (1991) quoting *Bull v. Bull*, 243 Ga. 72 (2) (252 SE2d 494) (1979). See also *Moore v. Wiggins*, 230 Ga. 51, 55 (195 SE2d 404) (1973) ("a pattern of continued wilful acts . . . intended to thwart and nullify the visitation provisions of the decree" will support a change in custody from one parent to another).

[17] 200 Ga. App. at 718.

not in the little [boy's] best interest to remain in this environment."[18] Further, the guardian's report provided a factual basis for a finding that the child's circumstances and conditions in Alabama negatively affected the welfare of the child.

Where there is evidence of a change of condition affecting the child's welfare, a change in custody is justified without a showing that the adverse condition had a measurable effect on the child.[19]

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED APRIL 30, 1998 — 

*M. V. Booker*, for appellant.
*William M. Wheeler*, for appellee.

---

[18] Id.
[19] See *In the Interest of S. D. J.*, 215 Ga. App. 779, 780 (452 SE2d 155) (1994).