A00A1788. HELM v. GRAHAM.
(547 SE2d 343)

RUFFIN, Judge.
Robert Dean Graham brought this action against his ex-wife, Stacey Helm, seeking a change in physical custody of their two minor

---

children, then ages six and nine. Following two evidentiary hearings, the trial court entered an order awarding physical custody to Graham. We granted Helm's application for discretionary appeal and now reverse.

Graham and Helm divorced in 1995 in Henry County, Georgia. Their original divorce decree gave Helm sole custody of the couple's two children. Graham petitioned to modify the decree in 1997, seeking custody or, in the alternative, joint custody of the children. In an October 2, 1997 order, the trial court noted various deficiencies in Helm's child care:

> the mother [Helm] has been extremely lacking in her parental duties and her conduct indicates a laxity in moral standards which might well work to the detriment of the two children. While in her custody, the children have had body lice and head lice. The daughter has had a vaginal infection and pinworms. Their dental care has been inadequate. [Helm's] conduct indicates a lack of stability. She moves from place to place frequently. She has been in bankruptcy. Although she only has a GED, she removed the boy from school and undertook to provide home school. She is now divorced for the second time and presently has a questionable relationship with one Jim Bloodworth. [Helm's] telephone and electrical power are in his name because, she says, her credit was bad and she could not get these services. Mr. Bloodworth babysits the children, stays overnight, and sleeps in the room with [Helm].

The trial court concluded that Helm's conduct "warrants, but does not demand, a change in custody." It ultimately found that physical custody should remain with Helm, but cautioned Helm to remedy her conduct. In addition, the court modified the original divorce decree by granting Graham joint legal custody, as well as the right to make major medical decisions for the children.

Following entry of the October 2, 1997 order, Helm obtained employment and maintained a home for the children in Columbus, Georgia. Their only move between October 2, 1997, and the trial court's first hearing on the current modification petition was to a larger unit within the same apartment complex. Helm also enrolled the children in the Muscogee County school system, where they received good grades and often appeared on the principal's list and honor roll. Although Helm continued her relationship with Jim Bloodworth for some period of time, she denied — and Graham presented no contrary proof — that Bloodworth spent the night at her apartment after October 2, 1997.

In June 1998, Helm met her current husband, an Army staff sergeant stationed at Fort Bragg near Fayetteville, North Carolina. The two married in December 1998. Helm, however, led Graham to believe that she did not intend to marry until July 1999 because "she was afraid of how [Graham] was going to react." In the spring of 1999, Graham learned that Helm "planned" to marry and move the children to Fayetteville, North Carolina. He subsequently petitioned for physical custody, claiming that "there has been a change in material circumstances which, if permitted to continue, will adversely affect the health and welfare of the children."

Granting Graham's request for physical custody, the trial court determined that

> [t]he ongoing pattern of instability since the last modification and the exposure to a pattern of short-term relationships whereby one father figure is replaced by another has caused and continues to cause a detriment to the children. Removing the children to North Carolina and subjecting them to lengthy drives for visitation would have a harmful effect on the children. Removing the children from the State of Georgia would also have the effect of modifying the father's right to joint legal custody by denying him reasonable access to the children, as well as denying him his right and duty to continue to make the children's major health care decisions.

The trial court further found that the children would be harmed by separation from their support group in Georgia, including their father and both sets of grandparents.[1]

On appeal, Helm argues that the trial court erred in giving physical custody to Graham. We agree.

In custody contests,

> the award of custody by a divorce court vests the custodial parent with a prima facie right. Ordinarily, the trial court should favor the parent having such a right. What the court must affirmatively find is either that the original custodian is no longer able or suited to retain custody or that conditions surrounding the child have so changed that modification of the original judgment would have the effect of promoting his welfare. . . . Although trial courts have wide

---

[1] Graham and the children's grandparents live in Henry County, Georgia, approximately two hours from the children's home in Columbus.

discretion in change of custody proceedings, there are limits to that discretion.[2]

If the original custody order has been modified, the focus shifts to the latest custody award: "A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award."[3] The trial court's decision on a modification petition will be affirmed on appeal if supported by any reasonable evidence.[4]

In this case, the record presents no reasonable evidence of a material change in condition since the October 2, 1997 order awarding physical custody to Helm.[5] On the contrary, conditions have *improved* since the last custody order. As described above, Helm has maintained a home in the same apartment complex, moving only once within the complex to secure a larger apartment. She placed the children in public school, where they excelled, and the record does not indicate that Helm has neglected the children's health care. In addition, Graham presented no evidence that any boyfriend of Helm's spent the night at Helm's apartment after the October 2, 1997 order. In fact, Helm is now married to a staff sergeant in the United States Army. The record reveals that the children "adore" and "want to do everything" with Staff Sergeant Helm and that the Helms found a three-bedroom home in Fayetteville, North Carolina, large enough for the children, with a fenced-in backyard and a pool.

These facts do not evidence an "ongoing pattern of instability" or a material change in condition supporting the trial court's custody modification.[6] The only changes in the children's environment consist of Helm's remarriage and the planned move to North Carolina. Relocating to another state and remarrying, however, "are not in and of themselves sufficient changes in conditions to authorize a change in custody."[7]

In its order, the trial court noted that Helm did not inform Gra-

---

[2] (Citations and punctuation omitted.) *Ormandy v. Odom*, 217 Ga. App. 780-781 (1) (459 SE2d 439) (1995).

[3] *Martin v. Greco*, 225 Ga. App. 752, 753 (1) (484 SE2d 789) (1997).

[4] Id.

[5] Graham apparently does not question that Helm is "suited to retain custody." *Ormandy*, supra at 781. Instead, he contends that a material change in condition has occurred.

[6] Given her planned move to North Carolina, Helm did not renew the lease for her apartment in Columbus. Between the two modification hearings, her lease ended, and she and the children moved in with a friend pending resolution of the custody issue. That temporary move is not reasonable evidence of instability.

[7] *Ormandy*, supra at 781 (1); see also *Moore v. Wiggins*, 230 Ga. 51, 55 (1) (195 SE2d 404) (1973); *Ofchus v. Isom*, 239 Ga. App. 738, 739 (1) (521 SE2d 871) (1999) (physical precedent only).

ham about the timing of her marriage, moved with the children from her Columbus apartment after the first modification hearing without notifying Graham, and unilaterally cancelled an orthodontist appointment scheduled for her son. Graham, however, presented no evidence that Helm's secrecy about her remarriage or her failure to inform him when she moved from the Columbus apartment affected the children's welfare or impacted his visitation rights. Similarly, the record does not authorize a finding that the cancelled orthodontic appointment adversely influenced their son's welfare. Helm testified that "she had contacted the orthodontist and that the appointment could be rescheduled with no problem," and Graham presented no evidence that Helm neglected to reset the appointment. None of these facts, therefore, supports a change in custody.[8]

The trial court's true focus was on the "change in condition" posed by Helm's remarriage and planned move, which will separate the children from their father and other family members. As noted above, however, that "change" cannot, standing alone, support a court order transferring physical custody.[9] Furthermore, Helm testified that she will continue to work with Graham on health care issues and will meet Graham between his home and Fayetteville, North Carolina, to exchange the children for visitation. The evidence, therefore, undermines the trial court's conclusion that Helm's relocation will deny Graham access to his children or prevent him from making decisions about their medical care.[10]

The record presents no reasonable evidence of a material change in conditions affecting the children's welfare since the October 2, 1997 order.[11] The trial court erred in removing physical custody from

---

[8] See *Young v. Young*, 216 Ga. 521, 522 (118 SE2d 82) (1961) ("The award of custody of a child of the parties in a divorce decree is conclusive unless there have been subsequently to the decree new and material changes in the conditions and circumstances substantially affecting the interest and welfare of the child."); *Mahan v. McRae*, 241 Ga. App. 109, 112 (522 SE2d 772) (1999) ("Without new and material conditions that substantially affect the welfare of the chid, a change of custody is not authorized."), cert. granted, Case No. S00G0533 (2000).

[9] See *Ofchus*, supra at 739; *Mahan*, supra at 112 ("Out-of-state moves by the custodial parent necessarily result in increased separation between the children and the noncustodial parent. But, relocating and remarrying are not in and of themselves sufficient changes in condition to authorize a change in custody.") (punctuation omitted).

[10] The record shows that Graham managed to make health care decisions for the children when they lived in Columbus, two hours away from his Henry County home.

[11] In its modification order, the trial court "adopted" the opinion of a psychologist presented by Graham, who indicated that a "pattern of instability" had harmed and will continue to harm the children if custody remains with Helm. Graham's psychologist, however, reached his initial opinion based on a 45-minute interview with the children, review of the October 2, 1997 order, and review of transcripts from the previous court hearings. Helm's conduct prior to the October 2, 1997 order clearly factored into the psychologist's opinions. Aside from that prior conduct, the psychologist found the children's environment "unstable" based upon Helm's remarriage and her plan to move the children to North Carolina, facts

Helm. The children's relocation, however, may warrant modification of Graham's visitation rights.[12] Accordingly, the trial court is directed on remand to hear testimony concerning this issue and, if appropriate, to enter an order modifying Graham's visitation rights.

*Judgment reversed and remanded. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 21, 2001 —
RECONSIDERATION DENIED APRIL 12, 2001.

*Crumbley & Crumbley, Wade M. Crumbley,* for appellant.
*Carl A. Adcock,* for appellee.

---

that do not evidence a change in condition sufficient to support the trial court's order.

[12] *Ormandy,* supra at 782.