S03G0275. BODNE v. BODNE.
(588 SE2d 728)

HUNSTEIN, Justice.

Rachel Ann and David Bodne were divorced in 1999. At the time of the divorce, primary physical custody of the two children was placed with Dr. Bodne with the parties agreeing to equally divide the time spent with the children. In 2001, Dr. Bodne, who had remarried and planned to move to Alabama, filed a petition to modify Ms. Bodne's visitation schedule to accommodate the out-of-state move. Ms. Bodne counterclaimed, opposing the move and seeking primary physical custody of the children. The trial court agreed and awarded primary physical custody to Ms. Bodne. The Court of Appeals reversed, finding that in the absence of any reasonable evidence of a substantial change in a material condition affecting the welfare of

the children, see *Ormandy v. Odom*, 217 Ga. App. 780 (1) (459 SE2d 439) (1995), where one parent is designated as the primary physical custodian and moves out of state the relocation alone cannot constitute a sufficient change in condition to modify custody. *Bodne v. Bodne*, 257 Ga. App. 761 (572 SE2d 95) (2002). We granted Ms. Bodne's petition for writ of certiorari to determine what weight should be given a custodial parent's move to another state in an action seeking a change in primary physical custody. We conclude that the Court of Appeals erred in holding that a trial court may presume that a custodial parent's decision to move is affirmatively in the best interests of the child, and reverse.

When exercising its discretion in relocation cases, as in all child custody cases, the trial court must consider the best interests of the child and cannot apply a bright-line test. This means that an initial custodial award will not always control after any "new and material change in circumstances that affects the child" is considered. *Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003). In *Scott*, we disapproved a self-executing custody change provision that allowed a child to be automatically wrested from the custodial home without benefit of judicial scrutiny into the child's best interests. *Scott* reiterated the public policy requirement set forth in OCGA § 19-9-3 that the primary consideration of the trial court in deciding custody matters must be directed to the best interests of the child involved, that all other rights are secondary, and that any determination of the best interests of the child must be made on a case-by-case basis. This analysis forbids the presumption that a relocating custodial parent will always lose custody and, conversely, forbids any presumption in favor of relocation.

The trial court was presented with evidence that Dr. Bodne's decision to move out of state to establish a new medical practice was grounded in a desire to enhance his economic opportunity and to leave behind the pre-divorce chapter of his life. His decision to place his interests first affected Ms. Bodne's ability to continue her equal involvement in the children's lives and also had a direct negative effect on the children. The trial court found that both parties were fit parents, that each parent had established a loving relationship with the children, and that since the time of the divorce the parties shared equal custody, care and access to the children. It further found that Dr. Bodne's decision to move out of state seriously affected an important aspect of the parties' divorce agreement, namely, that Ms. Bodne continue her equal involvement in the children's lives, and had a direct negative effect on the children as testified to by numerous witnesses, including the children's pediatrician, minister, and family friends. Thus, based upon the unanimous testimony of witnesses that the children would suffer irreparable harm in being

denied regular contact with their mother, the trial court determined there was a substantial change in a material condition affecting the children's welfare and exercised its discretion, see *Scott*, to order a change in primary physical custody to Ms. Bodne. In reversing the trial court, the Court of Appeals applied the rule that automatically assumes a child's best interests are served unless or until it is proved that a derivative effect of the move to the new location places the child at risk. See *Ormandy v. Odom*, supra, 217 Ga. App. at 780 (1). To the extent that case and any other Georgia case presumes the custodial parent has a prima facie right to retain custody unless the objecting parent shows that the environment of the proposed relocation endangers a child's physical, mental or emotional well-being, they are expressly overruled.

Based on our review of this case, we conclude that the order of the trial court reflects that when making its custodial determination based on the best interests of the children standard, it appropriately considered the myriad factors that had an impact on the children as established by the evidence adduced before it. Therefore, the trial court did not abuse its discretion in changing primary physical custody to Ms. Bodne and the Court of Appeals erred by reversing the trial court's ruling.

*Judgment reversed. All the Justices concur, except Benham, Carley and Thompson, JJ., who dissent.*

SEARS, Presiding Justice, concurring.

I completely concur with the majority opinion. I write separately to emphasize that, in relocation disputes, the dissent's focus on the custodial parent's "new family unit" and its deference to the relocation desires of the custodial parent overlooks the importance of the best interests of the child of the divorced parents, of the child's relationship with the non-custodial parent, and of the interests of the larger family created by divorce.

The dissent would subordinate the foregoing interests to the custodial parent's decisions regarding the new family unit, including where it will reside, except in the " 'most extreme circumstances.' "[1] For this conclusion, the dissent relies, in part, on an Oklahoma Supreme Court case, *Kaiser v. Kaiser*,[2] and *Kaiser*, in turn, relied on an article[3] that concludes that a child's frequency of contact with a non-custodial parent is not related to a child's best interests.[4] As I

---

[1] Dissent at 450, quoting *Kaiser v. Kaiser*, 23 P3d 278, 285 (Okla. 2001).

[2] 23 P3d 278.

[3] See *Kaiser*, 23 P3d at 284, n. 2, citing Judith S. Wallerstein & Tony J. Tanke, To Move or Not To Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce, 30 Fam. L.Q. 305 (1996).

[4] See Wallerstein and Tanke at 312.

recently noted, the conclusion of that article is "at odds with the stated public policy of this State."[5] The upshot of the dissent's focus on the "new family unit" headed by the custodial parent would be to make the non-custodial parent (most often the father) an outsider and to place the custodial parent's interests above those of the child. Moreover, this "new-family-unit" approach ignores the fact that a divorce creates a larger, interconnected "binuclear family," consisting of one household headed by the custodial parent and another household headed by the non-custodial parent, with the child being a part of both.[6] Instead of recognizing the significance of this "binuclear family" to the child, the dissent compares the most critical aspect of a child's life – his family – to "Humpty Dumpty" and states that because the child's family, like Humpty Dumpty, cannot be put back together again, the new family unit must take priority.[7] Contrary to the dissent's position, I believe that a child's family, though altered by divorce, has the potential to coalesce and meld into a viable "binuclear family" and to act together to further the best interests of the child. To facilitate this possibility, the paramount issue in relocation disputes should be whether the relocation is or is not in the best interests of the child. In this complex equation, a child's relationship with the non-custodial parent; his ties to local schools and friends; the child's age; the stress and instability of relocation and the corresponding benefits of consistency and stability for the child; the interests of the entire binuclear family; the custodial parent's reason for relocating; the dynamics of the custodial parent's new family unit; and any other relevant factors may be taken into consideration.[8]

Because I conclude that the majority opinion's focus on the best interests of the child has the greatest potential to maximize the well-being of the child, and because I conclude that the trial court did not abuse its discretion in concluding that the relocation was a substantial change that affected the welfare of the children and justified a modification of custody, I concur in the majority opinion.

BENHAM, Justice, dissenting.

I must dissent to the reversal of the decision of the Court of Appeals, a decision soundly based on well-considered Georgia law. The opinion of the majority in this case abandons clear and workable guidelines for resolving conflicts regarding the custody of children, substituting a vague and undefined overarching principle for specific

---

[5] *Scott v. Scott*, 276 Ga. 372, 381 (578 SE2d 876) (2003) (Sears, P. J., dissenting).

[6] See Marion Gindes, The Psychological Effects of Relocation for Children of Divorce, 15 J. Am. Acad. Matrim. Law 119, 121 (1998). The binuclear family can include stepparents, step-siblings, parents, siblings, half siblings, and grandparents.

[7] Dissent at 452.

[8] See *Scott*, 276 Ga. at 379 (Sears, P. J., dissenting).

and objective rules of law which have been a useful part of this State's jurisprudence for many years. The effect of this change in the law will be increased litigation, uncertainty in the area of domestic law, increased cost for the parties attendant to the expansion of litigation, unnecessarily contentious custody proceedings, and inconsistency from circuit to circuit, court to court, and judge to judge. Replacement of concrete standards with an amorphous best-interest-of-the-child standard will leave the trial courts free to consider any circumstance in a child's life as a potential reason to uproot the child, with no guidance in the form of presumptions such as those which have historically controlled such considerations in this State. Without any guidance for the beginning of a trial court's consideration, every dissatisfaction a noncustodial parent has with the parenting of the custodial parent becomes a proper basis for re-litigating custody.

Contrary to the majority's expansive reading of this Court's recent decision in *Scott v. Scott*, 276 Ga. 372 (578 SE2d 876) (2003), the presumption that the previous award of custody remains in the best interests of the child provides a valuable starting place for a trial court's consideration of cases such as this one. The holding in *Scott* that a self-executing change of custody provision is unenforceable because it does not permit consideration, at the time of the change, of the best interests of the child does not conflict with the retention of rebuttable presumptions as a means of guiding and structuring a trial court's decision-making. The majority opinion's expansion of *Scott* to eliminate all guidelines other than the ultimate principle of the best interests of the child not only leaves the trial court without a meaningful structure for its considerations, but invites the courts into every decision to be made in a family that has been divided by divorce. Such interference by the courts in family life is antithetical to traditional notions that family decisions should be made by families, not courts.

> Once the decree of dissolution is entered, a trial court's involvement in decision-making for the family is minimized. The court's role in a family's life following dissolution of marriage is not to review every parenting decision to determine if it is in the child's "best" interests. Once the court has determined the best residential placement of the child, based on the best interests standard set forth in the statute, the important job of the court is finished. The court does not again become significantly involved in parenting decisions, unless the child's well-being is seriously threatened by parenting decisions. A change in the location of the child's place of residence, with the primary residential parent, generally does not pose such a serious threat.

*In re Marriage of Pape*, 139 Wash.2d 694, 716 (989 P2d 1120) (2000). The wisdom of that holding has been discarded by the majority's decision today.

The majority's decision to eliminate objective standards in favor of any particular trial judge's biases regarding what constitutes the best interest of the child is particularly disturbing because it is made in the context of the issue of parental relocation which is commonplace in American life. In an increasingly mobile society with a divorce rate of 50 percent,[9] many jurisdictions in this country have dealt with the issues arising from a custodial parent's need or desire to move away from the location of the former marital residence to change jobs or to start a new family.

> The majority of jurisdictions which have considered this subject have adopted approaches which favor the custodial parent's right to move away from the state with their child. . . . [T]he decisions are generally based on judicial recognition of the post-divorce new family unit, and stability and continuity of the child's relationship with his primary custodian as the most important factor affecting the child's welfare. These courts also recognize that the well-being of the child is fundamentally interrelated with the well-being of the custodial parent, and that parent is the best person to make decisions affecting the child and the new family group, such as where they will reside. The courts therefore accord those childrearing decisions deference, and hold that judicial intervention in that decision making process should be limited to only the most extreme circumstances.

*Kaiser v. Kaiser*, 23 P3d 278, 284-285 (Okla. 2001).

Georgia law on the subject has been, until the decision in this case, in keeping with the majority position stated above. "The fact that the [custodial parent] has remarried, and intends to remove the children to another State . . . , does not constitute or amount to such a change of condition as would authorize modification of the decree." *Mercer v. Foster*, 210 Ga. 546 (3) (81 SE2d 458) (1954). The majority opinion's off-handed overruling of *Ormandy v. Odom*, 217 Ga. App. 780, 781 (459 SE2d 439) (1995), does not reveal the breadth of the change in Georgia law this decision will produce. Among the cases overruled in the majority opinion as "any other Georgia case [that] presumes the custodial parent has a prima facie right to retain cus-

---

[9] *Moon v. Guardian Postacute Svcs.*, 95 Cal. App. 4th 1005, 1021-1022 (116 Cal. Rptr. 2d 218) (2002) (Judge Ruvolo dissenting, citing "Time Almanac 2001 (Information Please)," p. 126).

tody . . ." are the following: *Moore v. Wiggins*, 230 Ga. 51 (195 SE2d 404) (1973); *Grubbs v. Dowse*, 226 Ga. 763 (177 SE2d 237) (1970); *Mercer v. Foster*, supra (cited in *Scott*, supra); *Lewis v. Lewis*, 252 Ga. App. 539 (2) (557 SE2d 40) (2001); *Daniel v. Daniel*, 250 Ga. App. 482 (552 SE2d 479) (2001); *Helm v. Graham*, 249 Ga. App. 126, 128-129 (547 SE2d 343) (2001); *Mahan v. McRae*, 241 Ga. App. 109 (522 SE2d 772) (1999); *Ofchus v. Isom*, 239 Ga. App. 738 (521 SE2d 871) (1999) (cited in *Scott*, supra); *Holt v. Leiter*, 232 Ga. App. 376 (4) (501 SE2d 879) (1998). Although they do not involve relocation, this Court's decisions in *Kirkland v. Canty*, 122 Ga. 261 (50 SE 90) (1905), and *Shields v. Bodenhamer*, 180 Ga. 122 (178 SE 294) (1935), will also stand overruled because they recognize the long-standing rule that a parent awarded custody of a child has a prima facie right to continuation of that custody absent a showing of a material change in circumstances affecting the welfare of the child.

In addition to protesting the abandonment of meaningful guidelines for trial courts in custody modification cases, I must take issue with the majority opinion's attempt to cast Dr. Bodne as a villain because his motivation for relocation included a desire to enhance his economic opportunity. Other jurisdictions, in keeping with the recognition expressed in *Kaiser v. Kaiser*, supra at 285, of "the post-divorce new family unit, and stability and continuity of the child's relationship with his primary custodian as the most important factor affecting the child's welfare," have emphasized the identity of interest between the child and the custodial parent.

> Although the best interests of the children always remain the paramount concern, "because the best interests of a child are so interwoven with the well-being of the custodial parent, the determination of the child's best interest requires that the interests of the custodial parent be taken into account." [Cit.]

*Yannas v. Frondistou-Yannas*, 395 Mass. 704, 710 (481 NE2d 1153) (1985). The Supreme Court of Wisconsin, in interpreting that state's statutory provision regarding removal of a child from the state, also recognized the interrelation of the interests of the child and the custodial parent: "Because removal may offer emotional and financial advantages to the custodial parent, removal may also foster the well-being of the child, for the interests of the child and the custodial parent, the primary caretaker, are intricately connected." *Long v. Long*, 127 Wis.2d 521, 532 (381 NW2d 350) (1986). For those reasons, improvement in the economic opportunity of the custodial parent should not be viewed as a negative factor as the majority opinion has done in this case, but as an enhancement of the welfare of the chil-

dren involved.

It is apparent from the trial court's order that the true basis of the ruling below was that Ms. Bodne's visitation rights would be adversely affected by the relocation. However, Georgia and other jurisdictions have held that a move's incidental impact on the non-custodial parent's visitation rights is not sufficient reason to change custody. "In . . . cases [involving one parent with primary physical custody], we held that the move alone was not sufficient to justify removing custody from the custodial parent, even where it severely impacted the noncustodial parent's visitation rights." *Lewis v. Lewis*, 252 Ga. App. 539, 541 (2), supra. In a case in which the trial court's focus was the same as that of the trial court in the present case, the Court of Appeals reversed with this explanation: "The trial court's true focus was on the 'change in condition' posed by [the] remarriage and planned move, which will separate the children from their father and other family members. As noted above, however, that 'change' cannot, standing alone, support a court order transferring physical custody. [Cits.]" *Helm v. Graham*, supra, 219 Ga. App. at 130. The Court of Appeals had previously recognized the impact of relocation on the noncustodial parent's access to the children, but did not permit that impact to control the custody question: "Out-of-state moves by the custodial parent necessarily result in increased separation between the children and the non-custodial parent. But, 'relocating and remarrying are not in and of themselves sufficient changes in condition to authorize a change in custody.' [Cits.]" *Mahan v. McRae*, supra at 112. The majority view on this aspect of the relocation problem was well stated by the Supreme Court of Oklahoma: "The cases uniformly hold that visitation rights alone are an insufficient basis on which to deny relocation and thereby change custody of a child. A custodial parent's relocation should not be disallowed solely to 'maintain the existing visitation patterns.' [Cits.]" *Kaiser v. Kaiser*, supra at 286. Supporting rationale for these holdings may be found in the decisions of other jurisdictions. A New York decision connected the importance of considering the new, post-divorce family unit to the impact on visitation:

> Like Humpty Dumpty, a family, once broken by divorce, cannot be put back together in precisely the same way. The relationship between the parents and the children is necessarily different after a divorce and, accordingly, it may be unrealistic in some cases to try to preserve the noncustodial parent's accustomed close involvement in the children's everyday life at the expense of the custodial parent's efforts to start a new life or to form a new family unit.

*Tropea v. Tropea*, 87 NY2d 727, 740 (665 NE2d 145) (1996). In *Long v. Long*, supra, 127 Wis.2d at 534, the Wisconsin Supreme Court spoke of the proper scope of a trial court's exercise of discretion in the context of a custodial parent's decision to move, requiring the trial court

> to recognize . . . that the custodial parent has the power and responsibility to make decisions for the family unit, that the custodial parent's well-being affects the children's well-being, and that the circuit court has broad latitude in fashioning and modifying visitation arrangements and has limited latitude in changing custody. We conclude that a finding . . . that an out-of-state move will be against the child's best interests must rest on more than a determination that removal will in some way change the visitation arrangements or change the child's relationship with the noncustodial parent.

In summary, I cannot join the majority opinion in this case because I believe its abandonment of established Georgia law on this subject is unwarranted and leaves this area of the law fraught with uncertainty and instability. The prima facie right of continued custody is a valuable tool which guides the consideration of trial courts in making the difficult decisions presented when divorced parents differ in their beliefs regarding what is in the best interests of their children. Accordingly, I must dissent.

I am authorized to state that Justice Carley and Justice Thompson join this dissent.

DECIDED NOVEMBER 10, 2003 —
RECONSIDERATION DENIED DECEMBER 11, 2003.

*James M. Allison, Jr.*, for appellant.
*Warner, Mayoue, Bates, Nolen & Collar, John C. Mayoue, Hope C. Allen*, for appellee.