A03A2450. COUSENS v. PITTMAN.
(597 SE2d 486)

SMITH, Chief Judge.

In this modification of child custody case, the mother, Kathleen Cousens, appeals from the trial court's order changing physical custody of the child from sole physical custody in the mother to joint physical custody with the father, William Pittman. Because we find that the trial court used improper criteria to effect the change of custody and that the evidence presented did not show that a material change in condition existed or that it was in the child's best interests, we reverse the judgment.

The record shows that the parents have been divorced for ten years, and both have remarried.[1] At the time of the bench trial, the minor daughter of the parties was one month shy of twelve years old. She had always lived with her mother. The father and mother both live in suburban Atlanta, but the father lives in Vinings, and the mother lives in Gwinnett County, where the child goes to school. The relationship between the mother and father has been acrimonious since the time of the divorce, with each party blaming the other. The father had filed a modification action previously, and his visitation was enlarged.

The trial court heard evidence from many witnesses, most of whom testified regarding the unpleasantness between the parents.

---

[1] The mother was recently divorced from her second husband.

The court also heard testimony from the parents, from the child in chambers, and from the child's treating psychologist. The child testified that she was aware of the difficulties between her parents and told the trial court that she loved her father, but "I don't really want to spend a lot more time with him. . . . And whenever I'm away from my mom for a long period of time, I miss her a lot, so it's hard." She wanted the custody and visitation arrangement to stay the way it was, saying "I just kind of like it the way it is. I mean, I know . . . my dad probably doesn't like it, but I do."

A school psychologist testified that the child felt that when she was with her father for visitation "she didn't feel that she was really getting to spend much time with him." The psychologist who was treating the child testified that the child had told her she felt excluded by her father from his new family, that she was afraid of her father when he was angry, and that she began having suicidal thoughts as a means of avoiding the entire tense situation. These thoughts resolved quickly, according to the psychologist, especially after the father agreed temporarily at the psychologist's request to forgo some visitation. The child has not expressed any suicidal thoughts since then. The psychologist described the child as "a very high-achieving girl. She sets high standards for herself, has high expectations, meets those expectations. . . . But underneath it all, she struggles with anxiety." In the psychologist's opinion, a change in custody "would increase her anxiety." She did opine that if the parents continue the hostile nature of their relationship, it will continue to be hard for the child. But although pressed by the trial court to predict what might happen if the child were to spend more time with her father, beyond acknowledging that it would raise the child's anxiety initially, the psychologist insisted she could not do so. "[P]redicting the course of therapy is really hard." She acknowledged that any change in custody or visitation is necessarily subject to a risk/detriment analysis. But the psychologist agreed that even if the child and her father were to have an improved relationship, the child still did not want to spend more time with her father.

The guardian ad litem appointed for the child during the course of this litigation performed a very thorough investigation, but the trial court sealed the guardian ad litem's report and never read or considered the document.

The trial court entered an order reciting its finding that

there has been a substantial change of circumstance. The Court finds that the relationship between [the child] and her father is being irreparably harmed. The Court finds that [the

child] is emotionally suffering as a result of all of the bickering and the guilt and anxiety that she feels from being caught in the middle between her parents.

The order then modified the divorce decree to give the mother and father joint physical custody, in addition to joint legal custody, requiring the child eventually to shuttle between her father's home to her mother's home on alternate weeks, while remaining in school in Gwinnett County and continuing her extra-curricular activities there. The trial court also modified the child support requirement so that when the full alternating physical custody schedule came into effect, neither parent would pay child support to the other.

We granted the mother's application for discretionary appeal, which was transferred to this court from the Georgia Supreme Court. One of the principal reasons we granted the application was our perception that on its face, the order entered suggested error. At the time the order was entered, Georgia law provided that

In a contest between the parents, the award of custody by a divorce court vests the custodial parent with a prima facie right. Ordinarily, the trial court should favor the parent having such a right. What the court must affirmatively find is either that the original custodian is no longer able or suited to retain custody or that conditions surrounding the child have so changed that modification of the original judgment would have the effect of promoting his welfare. It is a change for the worse in the conditions of the child's present home environment rather than any purported change for the better in the environment of the non-custodial parent that the law contemplates under this theory.

(Citations and punctuation omitted.) *Ormandy v. Odom*, 217 Ga. App. 780-781 (1) (459 SE2d 439) (1995). Several months after we granted this application, the Supreme Court decided *Bodne v. Bodne*, 277 Ga. 445 (588 SE2d 728) (2003), in which *Ormandy* and other cases were overruled "[t]o the extent that [that] case and any other Georgia case presumes the custodial parent has a prima facie right to retain custody unless the objecting parent shows that the environment of the proposed relocation endangers a child's physical, mental or emotional well-being." Id. at 447. See, e.g., *Green v. Krebs*, 245 Ga. App. 756 (1) (538 SE2d 832) (2000); *Holt v. Leiter*, 232 Ga. App. 376, 381 (4) (501 SE2d 879) (1998).

In deciding change of custody matters, trial courts may no longer presume that a custodial parent retains a prima facie right to custody. The standard remains, however, that a change of custody may be

granted only if a "new and material change in circumstances . . . affects the child." (Citation and punctuation omitted.) *Bodne,* supra, 277 Ga. at 446. See OCGA § 19-9-1 (b) (for change of custody, must have "showing of a change in any material conditions or circumstances of a party or the minor"). "The statutory language being plain and unequivocal, any contrary judicial construction is unauthorized. [Cit.]" *Ferguson v. Ferguson,* 267 Ga. 886, 887 (2) (485 SE2d 475) (1997).

*Bodne* was, of course, decided after the trial court's order in this case was entered. We need not decide, however, whether *Bodne* must be applied here, because even if the trial court could not presume that the mother in this case had a prima facie right to continuing physical custody, it also had a duty to ensure that the best interests of the child are served by changing physical custody only if a new and material change in circumstances exists. Because we find that no material change in circumstances was shown and that no evidence in the record supports the trial court's implicit conclusion that a change in custody is in the best interests of the child, we conclude that the trial court abused its discretion in changing physical custody from the mother to joint custody.

We are "mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." (Citation and punctuation omitted.) *Gordy v. Gordy,* 246 Ga. App. 802, 803 (1) (542 SE2d 536) (2000). In *Gordy,* the trial court did not state specifically a finding that a material change in circumstance existed or that a change in custody was warranted in the child's best interests. We held that "[w]ithout an explicit statement specifying the factual bases for the trial court's . . . conclusion that a change in material conditions or circumstances justified a change in custody in this case, this Court is not in a position to evaluate whether the trial court acted within the limits of its discretion." Id.

Here, the trial court did make a specific finding that a material change of circumstances existed. But despite voluminous evidence from the testimony of witnesses and the child, no factual support was given for this finding. The trial court recited only that the relationship between the child and her father was "being irreparably harmed" and that the child suffered emotionally from the "bickering" of both parents. While we may agree with the trial court's finding that the child suffers because of the behavior of her parents, we have found no evidence in the record that the parents' behavior is either new or a material change in circumstances. To the contrary, the "bickering" has occurred continuously since the parents' divorce. Indeed, the record shows that rather than being "irreparably harmed," the child's

relationship with her father was improving. The psychologist testified that while in May 2002, the child was rejecting visitation with her father completely, whereas at the time of trial, in December 2002, the child was "very comfortable and I think enjoying her visitation with her dad."

While the child's relationship with her father is certainly an important consideration, and the trial court is to be commended for its sensitivity to that issue, it is but one of "myriad factors" that have an impact on the child "as established by the evidence adduced before it." *Bodne,* supra, 277 Ga. at 447. And that evidence included an expert who was also treating the child.

In *Steed v. Deal,* 225 Ga. App. 35 (482 SE2d 527) (1997), we reversed a trial court's change of custody requiring a special needs child to alternate between his parents on a *yearly* basis, a ruling the trial court made even though teachers and mental health professionals testified that this yearly transition would impact the child adversely. We held that "there is no evidence in the record that might support a finding that the best interest of the child will be served by requiring that he change residence, school system, special education teachers, doctors, therapists, circle of friends, activities, and states on a yearly basis." Id. at 36 (3). The circumstances are certainly different here. But the child's treating psychologist testified that she did not see the child "as a resilient kid. I see her as a kid who's doing very well, and on the surface looks great, but as soon as you probe underneath a little bit, you get to this anxiety pretty quickly." In addition, the changed custody arrangement would require the child to travel long distances between her father's home and her school, her church, her after-school activities, her doctors, and her friends.

The Supreme Court held in *Scott v. Scott,* 276 Ga. 372 (578 SE2d 876) (2003), that "[t]he paramount concern in any change of custody must be the best interests and welfare of the minor child. [Cit.]" Id. at 377. Based on the logistic factors, the expert testimony, the child's testimony that she did not want more visitation with her father, and the evidence that her relationship with her father was improving, we similarly find that no evidence in the record supports the trial court's implicit conclusion that this child's best interests are served by a change to joint physical custody. The trial court's order is therefore vacated, and this case is remanded to the trial court for entry of an order consistent with this opinion.

*Judgment vacated and case remanded with direction. Ruffin, P. J., and Miller, J., concur.*

DECIDED MARCH 18, 2004.

*Moss & Rothenberg, Robert A. Moss*, for appellant.
*Sherriann H. Hicks, Pattie J. Williams*, for appellee.