**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 15, 2018**

# In the Court of Appeals of Georgia

A18A0221. WOODSON v. LINO.

PHIPPS, Senior Appellate Judge.

In this custody dispute between biological parents who never married, the issues before this Court arise out of the mother's decision to move from Georgia to New York with the child. For the reasons below, we hold that the trial court did not err in determining custody but that a portion of the award related to child support must be vacated and remanded for reconsideration.

The record shows that on July 15, 2016, Dwayne Woodson filed a petition for legitimation and custody in which he alleged that Maxine Lino had indicated that she was moving to New York and taking their child, who was born out of wedlock in 2008. Woodson prayed that Lino not be allowed to leave Georgia, that Woodson be legitimated, and that he be granted joint legal and primary physical custody of the

child. Woodson requested an emergency hearing due to the fact that the Georgia school year was about to begin. On August 4, following an emergency ex parte hearing, the court ordered that the child be returned to Georgia, if he had been removed, and that the child be enrolled in school in Atlanta. Lino moved to set aside the August 4 order on the grounds that she had not been served with notice of the hearing. She also answered, admitted that Woodson was the father, admitted that the child resided with her in New York, and counterclaimed for child support and attorney fees. Woodson countered with a motion for a finding that Lino was in contempt of the August 4 order prohibiting her from removing the child from Georgia.

The court held a hearing on August 17, 2016, and entered an order that day in which the court noted that the parties had agreed to vacate the August 4 order. Further, the court declared the child to be the legitimate child of Woodson. And the court found that the mother had the legal right to move with the child because the father had not previously legitimated the child. See OCGA § 19-7-25 (mother may exercise all parental power where child born out of wedlock has not been legitimated). The court awarded the parties joint legal custody and made temporary

2

physical custody decisions pending a final hearing. A guardian ad litem was appointed.

The final hearing was conducted on March 21, 2017, following which the court issued a final order on "Legitimation, Custody, and Child Support" and a "Final Parenting Plan." In the final order and plan, the court found, among other things, that based on the factors defined in OCGA § 19-9-3, the parties would share joint legal custody with the mother having primary physical custody. The court ordered the mother to relocate to Georgia and ordered the father to pay the mother's relocations costs, including a security deposit and three months' housing costs. The court also required the father to bear the cost of airfare and lodging for the mother to travel to Atlanta to secure housing. And the court ordered the mother to secure employment and begin paying for her own housing by the fourth month. Based on a finding that the father earned over $10,000 a month whereas the mother earned approximately

3

$1,250 per month, the court ordered the father to pay child support. Woodson appeals from the court's order.[1] Lino did not file a cross appeal.[2]

1. Woodson first contends that the trial court committed plain legal error by failing to apply the law as articulated by the Supreme Court of Georgia in *Bodne v. Bodne*, 277 Ga. 445 (588 SE2d 728) (2003). We disagree.

OCGA § 19-9-3 provides that the duty of a judge in a custody case "shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly." OCGA § 19-9-3 (2). The statute also provides a non-exclusive list of 17 factors relevant to determining the best interests of the child.

---

[1] Direct appeals are allowed from "[a]ll judgments or orders in child custody cases awarding, refusing to change, or modifying child custody or holding or declining to hold persons in contempt of such child custody judgment or orders." OCGA § 5-6-34 (a) (11).

[2] Notably, the mother did not cross-appeal the trial court's ruling that she move back to Atlanta. And the father offers only two sentences on the topic, suggesting that the trial court misapplied relevant law by ordering relocation and that it was outside the trial court's power to order relocation, all without any argument or citation of authority or without asking this court to reverse the court's order that the mother relocate. Accordingly, the issue of the propriety of the trial court's order that the mother relocate is not before us. Any possible issues as to contempt of the trial court's order to relocate, as well as whether a failure to relocate constitutes a material change of circumstances, remain for the parties on remand.

OCGA § 19-9-3 (4). Our Supreme Court's decision in *Bodne* made clear that "[w]hen exercising its discretion in relocation cases, as in all child custody cases, the trial court must consider the best interests of the child and cannot apply a bright-line test." 277 Ga. at 446. Under this standard, the child's interests are paramount:

> [T]he primary consideration of the trial court in deciding custody matters must be directed to the best interests of the child involved, [ ] all other rights are secondary, and [ ] any determination of the best interests of the child must be made on a case-by-case basis.

Id. Accordingly, there is neither a presumption that a relocating parent will lose custody nor a presumption in favor of relocation. Id.

Here, the trial court's order shows that it considered 14 of the 17 non-exclusive factors as a part of determining the best interests of the child. And we find nothing in the trial court's order to indicate that it applied any improper presumptions arising out of the mother's decision to move to New York. We also find nothing internally inconsistent in the trial court's finding that the child's best interest would be served in Atlanta but giving the mother, who apparently has not relocated to Georgia, primary physical custody. As stated above, any issue regarding the mother's compliance with the trial court's order is not before this court. In sum, Woodson's first enumeration of error is without merit.

2. Woodson contends that the trial court's factual findings were conclusory and not reflective of the evidence; accordingly, he argues that the facts were inadequate to support the court's ruling. "Where there is any evidence to support the decision of the trial court, this Court cannot say there was an abuse of discretion." *Haskell v. Haskell*, 286 Ga. 112, 112 (1) (686 SE2d 102) (2009) (citation and punctuation omitted); *Coppedge v. Coppedge*, 298 Ga. 494, 499 (3) (783 SE2d 94) (2016) (same).

Woodson contends that the trial court had no evidentiary support for four of the fourteen factual findings in the order. Specifically, Woodson contends the trial court's findings with regard to factors (D), (E), (F), and (M) of OCGA § 19-9-3 (4) were not supported by the evidence. We disagree.

On factor (D), the court found that the mother "appeared to be more in tune to the child's health and financial needs." With regard to the child's health needs, evidence was presented that the father and his new wife failed to recognize that the child needed immediate medical attention during a week with the father. After the mother picked up the child, she took the child to the emergency room where it was discovered that the child had scarlet fever. As to the child's financial needs, evidence was presented that the father made no payments for the child's support during some early years of the child's life; that the father prevaricated with regard to his

willingness to pay the mother for some expenses she needed to support the child; that the father admitted that he did not understand his own finances very well; that the father threatened to hide income if the mother asked for child support; and that when the mother was in financial distress, the father would not offer to help other than to offer to take the child until the mother had recovered from her financial distress. Thus, some evidence was presented to support the trial court's findings with regard to factor (D).

On factor (E), the trial court found that the mother "showed a greater disposition towards meeting the daily needs of the child with consideration taken to the potential payment of child support by the [father]." Evidence was presented to show that the father did not participate in the child's life for the first several years; that the father, despite a significantly larger income, never made any child support payments to the mother for the child's daily needs, choosing instead to make payments directly to providers, such as daycares, after-school programs, and sports programs; and that the father refused to allow the child to take toys and clothing that he had received at the father's home to the mother's home during the child's visitation there. Thus, some evidence was presented to support the court's finding on factor (E).

On factor (F), the trial court found that the mother was "more responsive to the child's needs" in terms of providing a good home environment for the child, which, according to OCGA § 19-9-3 (3) (F), concerns "the promotion of nurturance and safety of the child rather than superficial or material factors." In addition to the scarlet fever incident mentioned above, evidence was presented to show that the father was reticent with the mother regarding the child's health while the child was in his care and that the mother was the sole provider of nurturance and safety for the first several years of the child's life. Thus, some evidence was presented to support the court's finding on factor (F).

On factor (M), the trial court found that "based on each parent's past performance, the [mother] showed a greater inclination towards being more attentive to the child's needs in the future." The evidence cited above in connection with factors (D), (E), and (F) provide some support for this finding. In sum, because there was some evidence to support the trial court's findings, we find no abuse of discretion.

The father also contends that the trial court erred in a statement regarding the guardian ad litem's recommendations. We find, however, that when the court's order

is read as a whole, including the court's order that the mother return to Atlanta, there is no such error.

3. Finally, the father contends that the court erred by ordering him to pay for the mother's relocation to Atlanta. As a part of its order, the court ordered the father to pay the mother's relocation costs, "which shall include a security deposit and the first three months of the [mother and child's] housing." In addition, the court ordered the father to pay "the cost of airfare and hotel" for three nights and four days "for [the mother] to travel to Atlanta to view housing options and to execute a lease." The father argues that the statutory provisions regarding child support do not authorize the payment of "future travel," three months rent, or a security deposit.

When addressing a legitimation petition, the court shall enter an order establishing child support according to the guidelines provided in OCGA § 19-6-15. See OCGA § 19-7-22 (f). Travel expenses and extraordinary expenses may be awarded under those guidelines, but only as a deviation from the presumptive amount of child support as provided in that statute. See OCGA § 19-6-15 (b) (8) (F) & (J); see also OCGA § 19-6-15 (i) (2) (F) ("If court ordered visitation related travel expenses are substantial due to the distance between the parents, the court may order the allocation of such costs"); OCGA § 19-6-15 (i) (2) (J) ("Extraordinary expenses are

9

in excess of average amounts estimated in the child support obligation table and are highly variable among families.").

A trial court may deviate from the child support guidelines only "if supported by the required findings of fact and application of the best interest of the child standard." OCGA § 19-6-15 (b) (8); see also OCGA § 19-6-15 (i) (1) (A) & (B); *Hulsey v. Hulsey*, 300 Ga. 45, 45 n. 1 (792 SE2d 709) (2016) ("a trial court has considerable discretion to deviate from the presumptive child support amount based on the many specific deviations listed in the guidelines or on other grounds as long as it properly supports any deviation with written findings of fact") (citation and punctuation omitted).

Here, when calculating child support, the trial court specifically stated that "no deviation applies in this case," yet the court ordered the father to pay the mother's relocation costs as specified above. Without the requisite findings, we are unable to determine whether the trial court erred in ordering the father to pay these costs. We therefore vacate the portion of the trial court's order that assessed relocation costs on

the father and remand for reconsideration. See *Hulsey*, 300 Ga. at 45 (vacating award of child support and remanding for reconsideration where error existed in the child support worksheet and addendum).

*Judgment affirmed in part and vacated in part, and case remanded with direction. Ellington, P. J., and Bethel, J., concur.*