**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 18, 2019**

# In the Court of Appeals of Georgia

A19A2032, A19A2033. HAESUN PARK-POAPS v. POAPS; and
vice versa.

BARNES, Presiding Judge.

Haesun Park-Poaps and Richard C. Poaps are divorced and have two minor children from their previous marriage. In 2015, the trial court modified child custody and child support after the mother relocated out of state. The father subsequently filed a new petition to modify child support and parenting time/visitation and for attorney fees, and the mother counterclaimed for modification of child custody and child support and sought to have the father held in contempt. In 2019, the trial court entered an order modifying child support and parenting time/visitation, declining to modify child custody or to hold the father in contempt, and awarding attorney fees to the father. The trial court also entered a child support addendum that incorporated a child

support worksheet. The mother and father have now filed cross-appeals challenging the trial court's 2019 order and child support addendum.

Because the trial court erred in its application of Georgia's child support guidelines, we reverse the child support award contained in the 2019 order and child support addendum, and we remand the case for a redetermination of that award based on proper written findings accompanied by the required child support worksheet and schedules. Because we reverse the child support award, we vacate the related award of attorney fees contained in the 2019 order for reconsideration of whether and in what amount fees should be granted. We affirm the trial court's 2019 order in all other respects.[1]

*Marriage and Divorce.* The record reflects that the parties were married in 2009, and their two daughters were born in 2010 and 2011. They divorced in March 2014 pursuant to a final judgment and decree of divorce entered in the Superior Court of Cherokee County. The child custody and parenting plan incorporated into the final judgment awarded the parties joint legal and physical custody of the children and granted them equal parenting time. The mother was awarded child support, and each

---

[1] The father's request for imposition of frivolous appeal sanctions against the mother is denied. See Court of Appeals Rule 7 (e) (2).

parent was permitted to claim one of the daughters as a dependent on their respective federal and state income tax returns.

*The 2015 Modification Order.* Later in 2014, the mother accepted a college teaching position in Maryland and relocated there. The father continued to reside in Georgia with the children. The mother filed a petition to modify child custody in which she requested that the children relocate to Maryland with her, while the father filed a separate petition to modify custody in which he requested that the children continue to reside in Georgia with him. The trial court entered an ex parte order prohibiting the removal of the children from Georgia, and, ultimately, in August 2015, the court entered a final order modifying custody and child support that included a new parenting plan (the "2015 Modification Order"). In the 2015 Modification Order, the trial court granted the father primary physical custody of the children and provided the mother with parenting time/visitation on the first and third weekends of every month and on three-day weekends, on certain holidays, and during all but two weeks of the children's summer vacation. The trial court required that certain visitations with the mother occur within Georgia. Additionally, the trial court included a provision aimed at facilitating international travel with the children, given

3

that the mother is from South Korea and the father is from Canada, and both parties have extended families in their respective home countries.

The 2015 Modification Order changed child support so as to require the mother to pay child support to the father. The mother was granted a travel deviation of $700 from the presumptive amount of child support so that she could travel to see her children on a regular basis following her relocation outside of Georgia, and as a result of the deviation, she was required to pay child support of $250 per month. The parties also were ordered to divide the payment of costs of the children's extracurricular activities on a pro rata basis.[2]

*The 2019 Order and Child Support Addendum.* The mother subsequently relocated to Ohio for a new college teaching and research position, and in May 2018, the father filed a petition for modification of child support and parenting time/visitation and for attorney fees. He alleged, among other things, that the mother was earning more income as a result of her new teaching position and that she was

---

[2] In February 2016, the trial court granted in part and denied in part the mother's motion for reconsideration of the 2015 Modification Order. The court revised the 2015 Modification Order to specify that the mother could exercise spring break visitation with the children outside of Georgia and to clarify that its reference to the mother's employment as "unstable" was not meant to have a negative connotation but rather was meant as a reference to the fact that the mother may have to relocate again in the future.

not traveling to Georgia to exercise all of her court-ordered visitation with the children. Consequently, the father argued that the mother's $700 travel deviation was no longer appropriate and that her child support payments should be increased. The mother answered and counterclaimed for modification of child custody and child support and to have the father held in contempt for allegedly wilfully interfering with her effort to travel with the children to South Korea during summer vacation.

After conducting an evidentiary hearing where the mother, father, and other witnesses testified, the trial court entered an order in January 2019 addressing the father's petition and the mother's counterclaims (the "2019 Order"). The trial court found that there had been a substantial increase in the mother's income based on her new teaching position and that the mother had failed to exercise all of the court-ordered visitation in Georgia that had been contemplated when the $700 travel deviation was granted to her. Consequently, the trial court ruled that the $700 travel deviation would be eliminated and that the mother's monthly child support obligation would be increased to $969.34. The trial court further ruled that in lieu of receiving a travel deviation in a fixed monthly amount, the mother would receive

> a travel deviation for the roundtrip air flight of the children not to exceed five trips per year. The travel cost will be an unaccompanied

5

minor round trip plane ticket for each child for a direct flight purchased at least thirty days in advance. The Mother shall be allowed to deduct the cost of the ticket from the month's child support payment immediately following the return trip (i.e. an April spring break flight will be deducted from the May payment). She shall provide proof of costs of the tickets with the reduced payment amount.

The trial court also concluded that the father, as the primary physical custodian of the children, was authorized to claim both daughters as dependents for tax purposes, and the court ruled that the parties were to divide the costs of extracurricular activities on a pro rata basis.

With respect to child custody, the trial court found that there was no material change in circumstances and that it would not be in the best interest of the children to modify primary physical custody. The trial court further found that the father had not wilfully interfered with international travel and denied the mother's request to have him held in contempt. The trial court did find that the parenting time/visitation needed adjustment in certain respects. However, the trial court ruled that some of the visitation periods, including the mother's weekend visits with the children, were to continue to occur in Georgia.

The trial court addressed the issue of attorney fees in its 2019 Order and found that the father "prevailed on the issue of child support and failure to exercise court [ordered] visitation." The trial court awarded attorney fees to the father in the amount of $2,257.50 pursuant to OCGA § 19-6-15 (k) (5).

As part of the 2019 Order, the trial court also ordered the father to prepare and submit a child support addendum and worksheets within ten days of entry of the order. In February 2019, the trial court entered an order adopting the father's proposed child support addendum (the "Child Support Addendum") that incorporated a child support worksheet with certain schedules (the "Child Support Worksheet"). The Child Support Addendum did not include a Schedule E with the Child Support Worksheet reflecting specific deviations from the presumptive amount of child support awarded the father.

*Case No. A19A2032*

1. The mother contends that the trial court erred in failing to hold the father in wilful contempt of the parenting plan entered in connection with the 2015 Modification Order based on his interference with her proposed international travel with the children in 2016. We disagree.

7

"To hold in contempt, the court must find that there was a wilful disobedience of the court's decree or judgment." (Citation and punctuation omitted.) *Higdon v. Higdon*, 321 Ga. App. 260, 263 (1) (c) (739 SE2d 498) (2013). "The trial court's discretion in contempt matters is broad, and its decision will be upheld if there is any evidence to support it." (Citation and punctuation omitted.) *Turman v. Boleman*, 235 Ga. App. 243, 244 (510 SE2d 532) (1998).

Construed in favor of the trial court's ruling, the evidence adduced at the hearing reflects that in late 2015, the mother contacted the father about traveling with the children to South Korea in the second half of July 2016, which was during the last two weeks of the children's summer vacation. The father thereafter informed the mother that he was exercising his right, under the court-ordered parenting plan, to choose his two weeks of parenting time for the summer and had chosen the last two weeks of July 2016, the same weeks that she wanted to travel to South Korea. The father's attorney also sent a letter to the mother reiterating that pursuant to the terms of the parenting plan, the father was selecting the last two weeks of July 2016 as his two weeks of parenting time for summer vacation. The mother then proposed dates earlier in the summer for the South Korea trip, but on the condition that the father pay a portion of her travel expenses. The father refused to pay any of her travel expenses

8

because he was not required to do so under the 2015 Modification Order and parenting plan. The parties were unable to reach an agreement over payment, and the 2016 trip to South Korea did not occur. In 2017, the younger daughter's passport expired, and the passport was not renewed as a result of a continued dispute between the parties over the forms necessary for the renewal.

In its 2019 Order, the trial court found the following:

> Based upon the passport of one child being expired, the request for international travel could not have occurred. Both parties took a rigid and inflexible approach to the issue of [i]nternational travel and could have worked together to make the travel possible. There was a legalistic reading of the parenting plan, so there was no willful contempt. The Contempt Motion is Denied. The ongoing spiteful parenting style denied travel experiences and contact with relatives that could have benefited the children. Although it does not rise to the level of willful contempt, it is a disappointment to place the value of being right over the benefit to the children.

Contrary to the mother's contention on appeal, the trial court did not abuse its discretion in declining to hold the father in wilful contempt for not agreeing to the mother's plans for international travel with the children in 2016. Under the 2015 Modification Order and parenting plan, the father was entitled to select two consecutive weeks of summer vacation with the children and was not required to pay

for the mother's travel expenses, and "[a] party is entitled to rely on the plain terms of a court order until such provisions are modified by the court" and cannot be held in contempt for relying on such terms. *Turman*, 235 Ga. App. at 245. Hence, as the trial court concluded, the father's strict compliance with the terms of the parenting plan, even if "legalistic," did not constitute wilful contempt. See id.

The mother contends that the trial court erroneously found that her requested travel to South Korea in 2016 was a "moot issue" because the younger daughter's passport had expired. In this regard, the mother emphasizes that the daughter's passport was valid at the time of the proposed international trip in 2016 because the passport did not expire until 2017. But the trial court clearly did not treat the contempt issue as moot, for the court went on to rule on the merits of the mother's contempt petition and determined that the father had not acted in wilful contempt. Furthermore, to the extent that the trial court erroneously treated the daughter's passport as having already expired at the time of the proposed 2016 summer trip, a trial court's ruling on a contempt petition will be affirmed if right for any reason, *Turman*, 235 Ga. App. at 244, and, as previously noted, the trial court was entitled to find that the father's strict compliance with the terms of the 2015 Modification Order and parenting plan did not constitute wilful contempt. See id. at 245.

10

Because the record contains evidence that the father's conduct in 2016 was not in wilful violation of the 2015 Modification Order and parenting plan, the trial court did not abuse its discretion in denying the mother's counterclaim seeking to hold the father in contempt. See *Higdon*, 321 Ga. App. at 263-264 (1) (c); *Turman*, 235 Ga. App. at 245.

2. The mother argues that the trial court erred in denying her counterclaim seeking a modification in child custody. According to the mother, the trial court erred in finding no material change in circumstances that would warrant a modification in child custody and in failing to conduct the proper analysis to determine whether a change in custody would be in the children's best interests. We do not agree.

> A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child. A determination that there has been a material change in condition supporting a modification of custody will be affirmed absent an abuse of discretion, and where there is any evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion.

(Citations and punctuation omitted.) *Bankston v. Warbington*, 332 Ga. App. 29, 32 (1) (771 SE2d 726) (2015). See OCGA § 19-9-3(b); *Burnham v. Burnham*, __ Ga. App. __ (2) (829 SE2d 425) (2019). In light of this standard, the mother had the threshold burden of showing a material change in circumstances affecting the welfare of the children since the entry of the 2015 Modification Order. See *Young v. Young*, 209 Ga. 711, 714 (3) (75 SE2d 433) (1953) (burden is on parent seeking modification of current custody award "to show affirmatively a change in circumstances that would free the case from the former adjudication"); *Helm v. Graham*, 249 Ga. App. 126, 129 (547 SE2d 343) (2001) (noting that "[i]f the original custody order has been modified, the focus shifts to the latest custody award" to determine if "there has been a material change of condition affecting the welfare of the child since the last custody award") (punctuation and footnote omitted). The trial court concluded that the mother failed to carry that burden, and we discern no abuse of discretion in light of the record here.

In its 2015 Modification Order, the trial court found that the parties "have an ongoing tumultuous relationship and lack the ability to effectively co-parent or communicate" and have had "numerous disagreements" over visitation. Subsequently, at the 2019 evidentiary hearing, the mother's attorney conceded that "[t]hese parties are just as fractious with one another now as they were three or four years ago in 2015

12

when . . . we had a modification." Additionally, the father testified that while his communication with the mother was "pretty bad" and their relationship was "toxic," the children were happy, well-adjusted, doing well academically, were actively involved in extracurricular activities, and loved both parents. The father further testified that since 2015, he and the children have continued to live in the same house, he had not remarried, and there were no significant changes in their lives. The mother testified that the communication between her and the father had worsened, but that she was in the same profession, still lived out of state, and had not remarried since the 2015 Modification Order. Another witness testified that the children were well-behaved, were well-kempt, participated in their local Girl Scout Brownies troop, and were very close to their father.

Based on this record, there was evidence to support the trial court's conclusion that there had been no material change in circumstances affecting the children. As the mother acknowledges in her brief, parental discord that has been ongoing since before the prior custody award does not constitute a material change in circumstances. See *Cousens v. Pittman*, 266 Ga. App. 387, 390-391 (1) (597 SE2d 486) (2004) ("bickering" between parents that "occurred continuously since the parents' divorce" did not constitute material change in circumstances); *Appelbaum v. Hames*, 159 Ga.

13

App. 552, 553 (284 SE2d 58) (1981) (no material change based on a "preexisting condition"). The mother points out that in its 2019 Order, the trial court concluded that there was no material change in circumstances, but also found that there had been some worsening in the communication between the mother and father. However, contrary to the mother's suggestion, the trial court's conclusion and finding were not contradictory because the trial court was entitled to determine that the worsening was not so significant as to rise to the level of a material change in circumstances, particularly in light of the undisputedly longstanding tumultuous nature of the parties' relationship. See *Scott v. Scott*, 227 Ga. App. 346, 349 (1) (489 SE2d 117) (1997) (trial court did not abuse its discretion in finding that changes were not so significant as to constitute a material change in circumstances). Moreover, even if the strife between the parents had worsened to some degree, the mother was required to show that the changed condition affected the welfare of the children, see *Mahan v. McRae*, 241 Ga. App. 109, 112 (522 SE2d 772) (1999), and there was no evidence that the children's welfare had been affected. The trial court therefore acted within its discretion in concluding that there had been no material change in circumstances and thus in denying the mother's counterclaim seeking a modification in primary physical custody.

3. The mother argues that the trial court erred by not modifying her visitation rights to remove the restriction that some of her visitation with the children occur within Georgia. We are unpersuaded.

"Visitation rights of non-custodial parents are subject to review and modification upon the motion of either parent every two years without the necessity of showing a material change in circumstances." (Citation and punctuation omitted.) *Cannella v. Graham*, 325 Ga. App. 596, 596 (754 SE2d 385) (2014). See OCGA § 19-9-3 (b). "The standard to be applied in deciding visitation rights is the best interests of the child. Further, it is the express policy of this state to encourage contact between a child and the non-custodial divorced parent. OCGA § 19-9-3 (d)." *In Interest of R. E. W.*, 220 Ga. App. 861, 862 (471 SE2d 6) (1996). "The trial court is vested with discretion regarding visitation." *Durham v. Gipson*, 261 Ga. App. 602, 607 (2) (583 SE2d 254) (2003).

In its 2019 Order, the trial court geographically restricted the mother's visitation with the children on the first and third weekends of every month to within Georgia. However, the 2019 Order authorized the children to fly out of state to visit their mother for the spring and summer breaks and for two of the school three-day weekend breaks per year. The 2019 Order also temporarily left in place the restriction

15

that winter break visitation occur in Georgia but lifted the restriction and authorized the children to fly out of state for that visitation period "[b]eginning in 2020."

The trial court did not abuse its discretion in continuing to restrict a portion of the mother's visitation with the children to within Georgia. A trial court "is authorized to consider the possible detrimental effect on the child of frequent out-of-state travel, including the possibility of interference with school and other activities, and fashion the visitation accordingly." *In Interest of R. E. W.*, 220 Ga. App. at 864. See *Katz v. Katz*, 264 Ga. 440, 440 (445 SE2d 531) (1994) (concluding that visitation provisions that "subject[ed] the children to a rigorous travel schedule which [was] likely to interfere with school and other activities" were unduly burdensome). And while the mother claims that the travel restrictions on visitation violated her equal protection rights as the non-custodial parent, "[i]t is fundamental that no equal protection violation exists unless legislation treats similarly-situated individuals differently," and "custodial and non-custodial parents are not, by definition, similarly situated." *Ga. Dept. of Human Res. v. Sweat*, 276 Ga. 627, 630 (3) (580 SE2d 206) (2003). Accordingly, we find no error by the trial court.

4. The mother maintains that the trial court erred in finding that the increase in the mother's income justified a modification in child support. We disagree.

16

Pursuant to OCGA § 19-6-15 (k) (1), a parent may petition for a modification of child support if "there is a substantial change in either parent's income and financial status or the needs of the child." See *Wetherington v. Wetherington*, 291 Ga. 722, 724 (2) (a) (732 SE2d 433) (2012). "After the trial court finds satisfactory proof of a change in financial status, it must reconsider the amount of child support under the guidelines of OCGA § 19-6-15 (b)." *Wingard v. Paris*, 270 Ga. 439, 440 (511 SE2d 167) (1999). See OCGA § 19-6-15 (k) (4). Hence, "the showing of a change in the parent's financial status or a change in the needs of the child is a threshold requirement in a modification action." (Citation and punctuation omitted.) *Wetherington*, 291 Ga. at 725 (2) (a). "We review a trial court's ruling on a modification petition for abuse of discretion, and we will uphold the factual findings underlying the ruling if they are supported by any evidence." *Gowins v. Gary*, 288 Ga. App. 409, 410 (654 SE2d 162) (2007).

The record reflects that the mother held a teaching and research position at Ohio University and was a W-2 employee who received a regular nine-month salary as well as overtime pay. In its 2015 Modification Order, the trial court found that the mother's gross monthly income was $5,917. At the 2019 hearing, the mother testified that she was now earning more than when the 2015 Modification Order had been

17

issued and that her gross monthly income had increased to $8,673. Her new increased gross monthly income was also reflected in her domestic relations financial affidavit submitted to the court. Based on the mother's change in gross monthly income since 2015, the trial court found that there had been a substantial increase in the income of the mother justifying a modification in child support.

We discern no abuse of discretion by the trial court in light of the evidence before it of the mother's increased income. While the mother contends that the trial court should have more broadly assessed whether there had been a change in her "financial status," a trial court is authorized to base its finding of a substantial change on an increase in a parent's wage income. See *Rolader v. Pendleton*, 231 Ga. 16, 16 (2) (200 SE2d 108) (1973). Moreover, the mother presented no evidence at the 2019 hearing that her "financial status" was different from her wage income. Consequently, the trial court committed no error in finding that the mother's increased income justified a modification in child support.

5. The mother also argues that the trial court erred in excluding certain evidence of the parties' 2015 incomes. Pretermitting whether the trial court erred in excluding the evidence, we conclude that the mother has failed to show that reversal is warranted.

The record reflects that when the mother sought to introduce the father's 2015 tax return, the father objected, and the trial court excluded it. However, the mother did not make a proffer of what the 2015 tax return showed, and thus she cannot show any harm resulting from its exclusion. See *Sasser v. Adkinson*, 258 Ga. App. 699, 699-700 (574 SE2d 907) (2002) (noting that the "[a]ppellant is required to show harm as well as error to prevail on appeal," and concluding that the exclusion of certain records did not constitute reversible error, where appellant failed to make a proffer of the records and thus could not show any harm from their exclusion).

Later during the hearing, the father sought to question the mother about her income in 2015, but the mother objected, and the trial court sustained the objection. Although the mother argues on appeal that the trial court erred in excluding testimony about her 2015 income, she cannot now complain of an alleged error induced by her own conduct in the court below. See *Dyals v. Dyals*, 281 Ga. 894, 896 (3) (644 SE2d 138) (2007).

6. The mother further challenges the trial court's apportionment of the costs of the children's extracurricular activities on a pro rata basis. The mother contends that the costs of extracurricular activities are included in the presumptive amount of child support and that a deviation from that amount required the trial court to follow

Georgia's statutory child support guidelines and justify the deviation with written findings of fact. We agree.

Georgia's child support guidelines are set out in OCGA § 19-6-15 and "provide a detailed scheme for determining the amount of child support to be awarded by the court[,] and compliance with the statute's terms is mandatory." *Parker v. Parker*, 293 Ga. 300, 307 (3) (745 SE2d 605) (2013). The guidelines establish a presumptive amount of child support "calculated principally in proportion to the adjusted gross income of each parent." *Hardman v. Hardman*, 295 Ga. 732, 736 (3) (b) (763 SE2d 861) (2014). See OCGA § 19-6-15 (b) (outlining process of calculating child support). But "the presumptive amount of child support calculated pursuant to the statutory child support guidelines is not conclusive." *Hardman*, 295 Ga. at 737 (3) (b). The guidelines include a list of "11 situations that arise with some frequency in child support cases and that may, in a particular case, warrant a 'specific deviation' from the presumptive amount of child support." *Brogdon v. Brogdon*, 290 Ga. 618, 621 (5) (723 SE2d 421) (2012). See OCGA § 19-6-15 (i) (2) (listing specific deviations). The guidelines also provide that "[d]eviations from the presumptive amount of child support may be appropriate for reasons in addition to those

established under this subsection when the court . . . finds it is in the best interest of the child." OCGA § 19-6-15 (i) (3).

If the trial court determines that a deviation from the presumptive child support amount is warranted, the court must make specific "written findings of fact" in its child support order that include:

(i) The reasons the court . . . deviated from the presumptive amount of child support;

(ii) The amount of child support that would have been required under this Code section if the presumptive amount of child support had not been rebutted; and

(iii) A finding that states how the court's . . . application of the child support guidelines would be unjust or inappropriate considering the relative ability of each parent to provide support and how the best interest of the child who is subject to the child support determination is served by deviation from the presumptive amount of child support;

OCGA § 19-6-15 (c) (2) (E).[3] See *Fladger v. Fladger*, 296 Ga. 145, 147 (2) (765

SE2d 354) (2014) (explaining that deviations from the presumptive child support

amount must be supported by written findings of fact under OCGA § 19-6-15 (c) (2)

(E)); *Parker*, 293 Ga. at 303 (2) (citing OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B)

and noting that "[i]f the factfinder deviates from the presumptive amount of child

support, certain specific findings of fact must be set forth in the child support order").

The information used in calculating the amount of child support under the

guidelines must be recorded on a child support worksheet, and deviations from the

---

[3] OCGA § 19-6-15 (i) (1) (B) similarly states:
    (B) When ordering a deviation from the presumptive amount of child support, the court . . . shall consider all available income of the parents and shall make written findings . . . that an amount of child support other than the amount calculated is reasonably necessary to provide for the needs of the child for whom child support is being determined and the order . . . shall state:
        (i) The reasons for the deviation from the presumptive amount of child support;
        (ii) The amount of child support that would have been required under this Code section if the presumptive amount of child support had not been rebutted; and
        (iii) How, in its determination:
            (I) Application of the presumptive amount of child support would be unjust or inappropriate; and
            (II) The best interest of the child for whom support is being determined will be served by deviation from the presumptive amount of child support.

presumptive amount of child support must be set out in Schedule E of the worksheet.[4] *Parker*, 293 Ga. at 303 (2). See OCGA § 19-6-15 (b) (8) (noting that "proposed deviations shall be entered on the Child Support Schedule E–Deviations"), (m) (1) (addressing preparation of schedules and worksheets for calculating child support). And, "the trial court must attach a completed child support worksheet and Schedule E to the child support order, incorporate those documents by reference into the order, or enter the pertinent information from those documents directly into the order itself." *Black v. Ferlingere*, 333 Ga. App. 789, 791 (2) (777 SE2d 268) (2015). See OCGA § 19-6-15 (m) (1) (providing in part that "[t]he child support worksheets and any schedule that was prepared for the purpose of calculating the amount of child support shall be attached to the final court order or judgment").

The aforementioned requirements for deviating from the presumptive amount of child support – including supporting the deviation with the required written findings and setting out the deviation in Schedule E to the child support worksheet – apply both to a trial court's original grant of child support and any subsequent modification. See OCGA § 19-6-15 (c) (2) (setting out required findings and referring

---

[4] The worksheet and schedules are promulgated by the Georgia Child Support Commission. See OCGA § 19-6-15 (m) (2).

to "the final judgment or decree in a divorce case"); § 19-6-15 (k) (4) (stating that order modifying child support "shall include all of the information set forth in paragraph (2) of subsection (c) of this Code section"); *Brogdon*, 290 Ga. at 618-626 (1) - (5) (applying guidelines to original grant of child support); *Stowell v. Huguenard*, 288 Ga. 628, 628-632 (706 SE2d 419) (2011) (applying guidelines in context of child support modification action). As our Supreme Court has recognized, "the child support guidelines apply not only to initial determinations of child support, but also to modification actions, and are the expression of the legislative will regarding the calculation of child support and must be considered by any court setting child support." (Citations and punctuation omitted.) *Wetherington*, 291 Ga. at 726 (2) (a).

Pertinent to this case, the child support guidelines include a specific deviation for "special expenses incurred for child-rearing," including expenses incurred for children's extracurricular activities. OCGA § 19-6-15 (i) (2) (J) (ii). However, our Supreme Court has explained:

> The language of OCGA § 19-6-15 (i) (2) (J) (ii) makes clear that a portion of the basic child support obligation is intended to cover average amounts of special expenses for raising children, including the cost of extracurricular activities. If a factfinder determines that the full amount

of special expenses described in that division exceeds seven percent of the basic child support obligation, the "additional amount of special expenses shall be considered as a deviation to cover the full amount of the special expenses." Id. Such a deviation must then be included in Schedule E of the Child Support Worksheet and, as with other deviations from the presumptive amount of child support, the factfinder must make the required written findings. See OCGA § 19-6-15 (i) (1) (B). [See also OCGA § 19-6-15 (c) (2) (E).]

*Turner v. Turner*, 285 Ga. 866, 867-868 (2) (684 SE2d 596) (2009), disapproved in part on other grounds by *McCarthy v. Ashment-McCarthy*, 295 Ga. 231, 233 (2), n. 1 (758 SE2d 306) (2014).

Here, the trial court ordered the mother to pay a pro rata share of all of the costs of the children's extracurricular activities based on essentially the same ratio applied to the basic child support obligation. In requiring the mother to pay a portion of the extracurricular activities expenses, the trial court did not include written findings of fact or include a Schedule E as part of the Child Support Worksheet that was incorporated into the court's Child Support Addendum. Nor did the trial court limit its award to "the additional amount of special expenses" that exceeded seven percent of the basic child support obligation in accordance with OCGA § 19-6-15 (i) (2) (J) (ii). Consequently, the trial court fashioned a separate child support award to cover

25

extracurricular activities that fell outside the parameters of the child support guidelines.

> This[,] a court is [not] entitled to do. Under the . . . guidelines, a court may only deviate from the presumptive child support amount based on special expenses incurred for child-rearing, including extracurricular expenses, by complying with OCGA § 19-6-15 (i) (2) (J) (ii) (defining "special expenses" as certain child-rearing expenses exceeding seven percent of basic child support obligation) and OCGA § 19-6-15 (i) (1) (B) (requiring written findings for all deviations). [See also OCGA § 19-6-15 (c) (2) (E) (also requiring written findings).] Thus, while the court was free to [decide whether to grant or deny] a deviation from the presumptive child support amount based on the cost of the children's extracurricular activities, it was without authority to make a separate child support award, one outside the parameters of the Child Support Worksheet, based on the cost of such activities.

(Citation omitted.) *Turner*, 285 Ga. at 868 (2).

The father argues, however, that the mother is precluded from challenging the trial court's decision to order a pro rata division of the costs of extracurricular activities outside of the child support guidelines. The father emphasizes that the 2015 Modification Order contained a provision requiring the division of the costs of the children's extracurricular activities pro rata, and he contends that the mother should have challenged that provision at that time. But "[t]he doctrine of res judicata is less

26

strictly applied in divorce and alimony cases, including cases dealing with child support issues, and does not bar litigation of matters that merely could have been put at issue in the earlier proceeding." (Citation and punctuation omitted.) *Hardman*, 295 Ga. at 735 (2). Indeed, because child support awards are subject to modification under OCGA § 19-6-15 (k) (1), a former spouse is not barred by the principle of res judicata from arguing that the provisions of a prior award should be revised in the context of a new modification action. *Odom v. Odom*, 291 Ga. 811, 813 (1) (733 SE2d 741) (2012). See *Yarbrough v. Yarbrough*, 244 Ga. 313, 314 (260 SE2d 47) (1979) (an action for modification of child support constitutes a new in personam proceeding). Furthermore, the provisions addressing extracurricular activities in the 2019 Order and Child Support Addendum are different from the 2015 Modification Order. The provision in the 2015 Modification Order placed an annual cap of $1,500 per child for all extracurricular activities subject to apportionment, while the provisions in the 2019 Order and Child Support Addendum contain no such cap. Additionally, the Child Support Addendum increased the pro rata percentage owed by the mother to 42 percent from the previous percentage of 33.14 percent set out in the 2015 Modification Order. The father's argument that the mother is precluded from challenging the pro rata division of the costs of extracurricular activities based on her

27

failure to challenge the provision in connection with the prior modification action therefore is unavailing.[5]

Accordingly, because the trial court's pro rata division of the costs of the children's extracurricular activities fell outside of the parameters of the child support guidelines, we reverse the trial court's child support award made in the 2019 Order and Child Support Addendum, and we remand for further proceedings consistent with this opinion. See *Johnson v. Ware*, 313 Ga. 774, 778 (3) (723 SE2d 18) (2012); *Brogdon*, 290 Ga. at 625 (5) (b); *Black*, 333 Ga. App. at 792 (2). On remand, the trial court should determine whether, under the parameters set forth in OCGA § 19-6-15 (i) (2) (J) (ii), a specific deviation from the presumptive amount of child support

---

[5] We also note the general rule that "the actions of a party do not waive the trial court's compliance with the mandate to enter findings pursuant to OCGA § 19-6-15 (c) (2) (E) and 19-6-15 (i) (1) (B)." *Wallace v. Wallace*, 296 Ga. 307, 309 (1) (766 SE2d 452) (2014). There is an exception to this general rule where a trial court enters a child support order without the requisite factual findings, and the former spouse thereafter files a motion for new trial that does not raise the failure of the order to contain such findings; in that circumstance, if the former spouse then seeks to raise the issue of the lack of written findings for the first time on appeal, the issue is deemed waived. See *McClendon v. McClendon*, 297 Ga. 779, 780 (2) (778 SE2d 213) (2015); *McCarthy*, 295 Ga. at 233 (2). Unlike the former spouse in cases like *McClendon* and *McCarthy*, the mother "did not file in the trial court a motion for new trial [in connection with the present modification action] that did not raise the trial court's failure to comply with the findings requirement, and then attempt to raise the issue for the first time in this Court." *Wallace*, 296 Ga. at 310 (1), n. 2 (distinguishing *McCarthy*).

should be granted based on special expenses incurred for child-rearing, including costs incurred for the children's extracurricular expenses. See *Turner*, 285 Ga. at 868 (2). If the trial court determines that such a deviation is appropriate, it should support the deviation with the required written findings (OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B)), enter the deviation on Schedule E of the Child Support Worksheet (OCGA § 19-6-15 (b) (8)), and incorporate the schedule and worksheet into its order (OCGA § 19-6-15 (m) (1)). See *Turner*, 285 Ga. at 868 (2).

7. Although we have held that the trial court's child support award must be reversed and the case remanded, we will consider several of the mother's other contentions relating to child support that are likely to recur on remand.

(a) The mother contends that the trial court erred in eliminating her $700 travel deviation from the presumptive amount of child support. Under the child support guidelines, "[i]f court ordered visitation related travel expenses are substantial due to the distance between the parents," the trial court may allocate those costs by deviation from the presumptive child support amount, "taking into consideration the circumstances of the respective parents as well as which parent moved and the reason for such move." OCGA § 19-6-15 (i) (2) (F). See OCGA § 19-6-15 (b) (8) (F) (recognizing a deviation from the presumptive amount of child support for travel

29

expenses). The deviation may be eliminated "[i]f the circumstances which supported the deviation cease to exist." OCGA § 19-6-15 (i) (1) (D).

Here, the trial court found that the mother had been granted a "substantial travel deviation . . . to facilitate the visitations in the best interest of the children" but had not exercised all of the contemplated visitation because of her work schedule and other issues. Because there was evidence to support these findings by the trial court based on the father and mother's testimony at the hearing, we discern no error in the trial court's conclusion that the circumstances which supported a $700 travel deviation had ceased to exist.

However, the trial court did not simply eliminate the $700 travel deviation; the court went on to impose a new deviation for travel expenses. When a trial court redetermines child support in a modification action, a deviation to the presumptive child support amount "cannot be continued or imposed" unless supported by the statutory written findings required by OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B). *East v. Stephens*, 292 Ga. 604, 606 (740 SE2d 156) (2013). The trial court also must enter the deviation on Schedule E to the child support worksheet. See *Stowell*, 288 Ga. at 632. Here, the trial court made some of the findings required to support a travel deviation, but did not explain how "application of the child support guidelines would

30

be unjust or inappropriate considering the relative ability of each parent to provide support." OCGA § 19-6-15 (c) (2) (E) (iii). See also OCGA § 19-6-15 (i) (1) (B) (iii) (I). In this respect, the trial court's written findings were required to "connect the dots," and "we cannot rely on implications or our own assumptions" as to why the trial court awarded the deviation. *Fladger*, 296 Ga. at 149 (2). See *Jackson v. Sanders*, 333 Ga. App. 544, 557-558 (4) (773 SE2d 835) (2015) (declining to presume why trial court would have found that application of the guidelines would be unjust or inappropriate). In addition, the trial court did not include a Schedule E reflecting the deviation for travel expenses as part of the 2019 Order and the Child Support Addendum. Accordingly, the trial court's new travel deviation failed to comply with the child support guidelines, and in recalculating child support on remand, the court should reconsider the travel deviation consistent with this opinion.[6]

(b) The mother asserts that the trial court erred in authorizing the father to claim both children as dependents on his federal tax return. We disagree because "Georgia courts do not have the authority to award the federal income tax dependency exemption to a non-custodial parent." *Hulsey v. Hulsey*, 300 Ga. 45, 45 (792 SE2d

---

[6] We further discuss the travel deviation in the father's cross-appeal. See infra Division 9.

709) (2016).[7] The trial court therefore would not have been authorized to award the federal income tax dependency exemption for either child to the mother. See id.

8. Lastly, the mother argues that the trial court erred in awarding attorney fees to the father pursuant to OCGA § 19-6-15 (k) (5). That statutory subsection provides:

> In proceedings for the modification of a child support award pursuant to the provisions of this Code section, the court may award attorney's fees, costs, and expenses of litigation to the prevailing party as the interests of justice may require. When a custodial parent prevails in an upward modification of child support based upon the noncustodial parent's failure to be available and willing to exercise court ordered visitation, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to the custodial parent.

OCGA § 19-6-15 (k) (5).

The first sentence of OCGA § 19-6-15 (k) (5) authorizes an award of attorney fees to the "prevailing party," with the "prevailing party" determined by looking "solely to the result" of the child support modification action. (Citation and

---

[7] The federal income tax dependency exemption has been reduced to zero for 2018 through 2025. See 26 USC § 151 (d) (5) (A). "However, the ability to claim a child as a dependent may continue to have relevance to the child tax credit, which has been increased dramatically for the same years." David A. Webster & Deborah A. Johnson, McConaughey's Ga. Divorce, Alimony and Child Custody (2018-2019 ed.), § 34:5. See 26 USC § 24 (a), (c) (1), (h); 26 USC § 152 (c), (e).

punctuation omitted.) *Boley v. Miera*, 347 Ga. App. 161, 162 (817 SE2d 823) (2018). To be the "prevailing party," the father had to show that the mother's child support obligation increased, even if not to the extent that he requested. See *Mironov v. Mironov*, 296 Ga. 114, 115 (765 SE2d 326) (2014).

The second sentence of OCGA § 19-6-15 (k) (5) mandates an award of attorney fees to the custodial parent if (1) he or she prevails by obtaining an upward modification of child support and (2) the modification is based on "the noncustodial parent's failure to be available and willing to exercise court ordered visitation." Thus, the father had to show that both (1) and (2) were satisfied in order to be entitled to mandatory attorney fees under this sentence of the statute.

There was evidence of the mother's failure to be available and willing to exercise all of her court-ordered visitation, as discussed supra in Division 7 (a). However, in light of our reversal of the trial court's child support award supra in Division 6, we vacate the trial court's award of attorney fees to the father, and on remand, the court may reconsider whether the father is the prevailing party under either sentence of OCGA § 19-6-15 (k) (5) once the child support award is recalculated, and if so, in what amount. See *Jackson v. Sanders*, 333 Ga. App. 544, 561 (6) (773 SE2d 835) (2015).

9. In his cross-appeal, the father challenges the trial court's decision pertaining to the travel deviation from the presumptive child support amount. As previously noted, after eliminating the $700 travel deviation, the trial court granted a new travel deviation, ruling that the mother could deduct the future costs of plane tickets that she purchased for the children to visit her, "not to exceed five trips per year," from her child support due after the return trip. The trial court did not provide an upper limit for how much each ticket could cost or otherwise quantify the cost of a ticket in any respect. The father states in his brief that "[t]here is no dispute that [the mother] should be granted some appropriate deviation from the presumptive amount of child support for . . . travel." However, the father argues that the trial court erred by granting a travel deviation based on speculative future circumstances rather than on evidence of travel costs presented at the hearing, by failing to include the required findings of fact and a Schedule E to support the travel deviation, and by failing to incorporate the Child Support Addendum and Child Support Worksheet into the 2019 Order. Although we ruled in Case No. A19A2032 that the trial court's child support award must be reversed and the case remanded, we will consider the father's arguments to the extent that they raise issues that are likely to recur on remand.

As noted supra in Division 7 (a), under the child support guidelines, if travel expenses associated with visitation are substantial because of the distance between the parents, the trial court can allocate the costs of travel for visitation by deviating from the presumptive child support amount. OCGA § 19-6-15 (b) (8) (F), (i) (2) (F). However, a modification of child support cannot be predicated on "speculative future circumstances." *Howard v. Howard*, 262 Ga. 144, 145 (1) (414 SE2d 203) (1992). Rather, OCGA § 19-6-15 (c) (2) (A) requires that the trial court's order specify a "sum certain amount" of child support that a parent must pay as determined by use of the child support worksheet. See *Marks v. Soles*, 339 Ga. App. 380, 389 (4) (c) (793 SE2d 587) (2016) (noting that order modifying child support must specify "sum certain amount," quoting OCGA § 19-6-15 (c) (2) (A)); *Hamlin v. Ramey*, 291 Ga. App. 222, 226 (2) (661 SE2d 593) (2008) (recognizing that OCGA § 19-6-15 (c) (2) requires that a child support order include a provision specifying the "sum certain amount one parent shall pay to the other"). And, "the quantitative calculations regarding the amount of [a] deviation require the child support worksheet to be populated with accurate facts and figures in order to determine the amount of the deviation." *Parker*, 293 Ga. at 308 (3).

Applying these principles, we conclude that the travel deviation granted by the trial court, which failed to include any cost information, was too speculative to fall within the parameters of the child support guidelines. Furthermore, as noted supra in Division 7 (a), the trial court failed to make all of the required written findings under OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B) to support a travel deviation and did not include a Schedule E to the Child Support Worksheet identifying the deviation. On remand, the trial court should reconsider the travel deviation consistent with Division 7 (a) and this division of our opinion. See *Wallace*, 296 Ga. at 308-309 (1); *Woodson v. Lino*, 345 Ga. App. 745, 749 (3) (815 SE2d 113) (2018).

*Judgment affirmed in part, vacated in part, reversed in part, and case remanded with direction. Mercier and Brown, JJ., concur.*